**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Rachel Lumbra, individually and on behalf of
all others similarly situated,

                              Plaintiff,

              - against -

Suja Life, LLC,

                    Defendant

Case No. 1:22-cv-893 (MAD/DJS)

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Suja Life, LLC ("Defendant") manufactures, labels, and sells juices including blends of apple and beet represented as "Cold-Pressed" under the Suja brand ("Product").




2.      Juice refers to the aqueous liquid contained in fruits and vegetables.

3.      To obtain juice, fruits and vegetables are squeezed and/or pressed.

4.      Such juices can be sold to consumers as "fresh" because they have not been subject to any other treatment method to extend their shelf life.

5.      Consumers value the sensory, nutritional, and organoleptic properties of fresh juice.

6.      For decades, companies have described juices in ways that truthfully inform consumers of their qualities and allow for comparisons between different products.

7.      Where juice has not been subject to treatment beyond being extracted, terms used include "fresh squeezed," "fresh pressed," and "cold-pressed."

8.      For instance, though the apple juice below is made from "100% Freshly Pressed Apples," it prominently discloses it is "Flash Pasteurized," while the adjacent orange juice states, "Pasteurized" in large capital letters.

 

9.     Other brands of cold-pressed juices prominently disclose the treatment that occurs after the juice is obtained from fruits and vegetables through being cold-pressed.

10.     For instance, the 7-Select brand of cold-pressed juice prominently states, "Flash Pasteurized" directly beneath "Cold Pressed Juice," while the Suja product vaguely references "High Pressure Certified" in a seal at the bottom of the bottle, where consumers are unlikely to notice it and have no idea what it refers to.



11.     The Product is often sold in produce aisles where groceries are sold, in proximity to juices made at those stores, though such competitor juices have not been subject to any treatment beyond being cold-pressed, which furthers the impression it is not subsequently treated.

12.     By describing the Product as "Cold-Pressed" without any prominent, clear disclaimers of other processing steps, consumers expect it will be fresh.

13.     However, the Product is not fresh and has more in common with juices sold in standard refrigerator cases because it is highly processed after being cold-pressed.



14.     The front label purports to reference this, by the small seal stating "High Pressure Certified" at the bottom of the bottle.

 

15.    No visible explanation is provided for what this term means.

16.    Given that all juices are made by applying pressure, even if consumers notice this seal, they will believe it refers to the cold-pressing.

17.    The back of the label refers to the component fruit and vegetables being subject to "cold pressure to keep them feeling fresh" followed by a webpage about "HPP."



**CAN'T STOP THE BEET**

Suja is made sunny in San Diego, where we pick our favorite local fruits and veggies and then ==chill them out with cold pressure to keep them feeling fresh== and tasting delicious. We bottle up the power of plants so you can make nutrition your bliss!

SUJAJUICE.COM/HPP

18.    HPP refers to high pressure processing, a non-thermal treatment method to preserve juice for up to 60 days.

19.    Juice subjected to this treatment method is no longer fresh, and it is misleading to describe such a juice as "cold-pressed" without an equivalent and conspicuous disclosure of this processing step.

20.    Defendant makes other representations and omissions with respect to the Product

which are false and misleading.

21.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.99 per 12 FL OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

22.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

23.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

24.    The Product has been sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

25.    Plaintiff Rachel Lumbra is a citizen of New York.

26.    Defendant Suja Life, LLC is a Delaware limited liability company with a principal place of business in Oceanside, San Diego County, California.

27.    The sole member of Defendant is Paine Schwartz Partners Founders LPH GP, Inc., a Delaware corporation with a principal place of business in New York, New York.

28.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

29.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years with the representations described here, in thousands of locations, in the States covered by Plaintiff's proposed classes.

30.    The Product is available to consumers from locations including grocery stores,

6

warehouse club stores, convenience stores, and online.

31.   Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in this District, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

32.   Plaintiff Rachel Lumbra is a citizen of Schenectady, New York, Schenectady County.

33.   Defendant Suja Life, LLC is a Delaware limited liability company with a principal place of business in Oceanside, California, San Diego County.

34.   Suja is a leading seller of organic fruit and vegetable beverages.

35.   Suja has won the juice industry's most coveted awards including Whole Foods Market Supplier of the Year and multiple NEXTY awards.

36.   Products under the Suja brand have an industry-wide reputation for quality without cutting corners.

37.   Consumers trust the Suja brand to be honest with them, because it has built up a reservoir of good will based on its practices and quality.

38.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Whole Foods Market, 1425 Central Ave, Albany, NY 12205 and Target, 1440 Central Ave, Colonie, NY 12205, between January 1, 2022 and August 1, 2022, among other times.

39.   Plaintiff believed and expected the Product was not processed after being cold-pressed, based on the front label, its placement within the store, prominent statements on similar products which disclosed how they were processed after being pressed, and/or the lack of any

conspicuous disclosure of treatment methods beyond being cold-pressed, because that is what the representations and omissions said and implied.

40.   Plaintiff did not take notice of the small "High Pressure Certified" seal on the front label nor review the back of the label, and did not know what cold or high pressure was relative to processing of juice.

41.   Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

42.   Plaintiff bought the Product at or exceeding the above-referenced price.

43.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

44.   Plaintiff paid more for the Product than she would have paid based on the false and misleading statements and omissions, and it was worth less than represented because its composition and/or abilities was not consistent with what it said.

<u>Class Allegations</u>

45.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Nevada, Wyoming, Louisiana, Mississippi, Alaska, Montana, South Carolina, Tennessee, and West Virginia who purchased the Product during the statutes of limitations for each

cause of action alleged.

46.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48.    Plaintiff is an adequate representative because her interests do not conflict with other members.

49.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

General Business Law§§ 349 and 350

52.    Plaintiff incorporates by reference all preceding paragraphs.

53.    Plaintiff believed the Product was not processed after being cold-pressed, based on the front label, its placement within the store, prominent statements on similar products which disclosed how they were processed after being pressed, and/or the lack of any conspicuous disclosure of treatment methods beyond being cold-pressed.

54.    Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

55.    Plaintiff relied on the representations and omissions to believe the Product was not

processed after being cold-pressed, based on the front label, its placement within the store, and prominent statements on similar products which disclosed how they were processed.

56.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(Consumer Fraud Multi-State Class)</u>

57.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

58.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

59.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

60.    As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

61.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was not processed after being cold-pressed, based on the front label, its placement within stores, and prominent statements on similar products which disclosed how they were processed.

62.    Defendant directly marketed the Product to Plaintiff and consumers through its

advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

63.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

64.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was not processed after being cold-pressed, based on the front label, its placement within the store she purchased it at, and prominent statements on similar products which disclosed how they were processed.

65.    Defendant's representations affirmed and promised that the Product was not processed after being cold-pressed, based on the front label, its placement within stores, and prominent statements on similar products which disclosed how they were processed.

66.    Defendant described the Product so Plaintiff and consumers believed it was not processed after being cold-pressed, based on the front label, its placement within stores, and prominent statements on similar products which disclosed how they were processed, which became part of the basis of the bargain that it would conform to its affirmations and promises.

67.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

68.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high-quality, cold-pressed beverages.

69.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

70.    Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

71.    Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

72.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

73.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was not processed after being cold-pressed, based on the front label, its placement within stores, and prominent statements on similar products which disclosed how they were processed.

74.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was not processed after being cold-pressed, based on the front label, its placement within the store she purchased it at, and prominent statements on similar products which disclosed how they were processed, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

75.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

76.     Defendant had a duty to truthfully represent the Product, which it breached.

77.     This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high-quality, cold-pressed beverages.

78.     Defendant's representations and omissions regarding the Product went beyond the

specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

79.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

80.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

81.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

82.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was not processed after being cold-pressed, based on the front label, its placement within stores, and prominent statements on similar products which disclosed how they were processed.

84.     Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

85.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

3.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4.  Other and further relief as the Court deems just and proper.

Dated:   August 28, 2022

                                                Respectfully submitted,

                                                /s/Spencer Sheehan
                                                Sheehan & Associates, P.C.
                                                60 Cuttermill Rd Ste 412
                                                Great Neck NY 11021
                                                (516) 268-7080
                                                spencer@spencersheehan.com