**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

**RACHEL LUMBRA, individually and on behalf of**
**all others similarly situated,**

                                        **Plaintiffs,**

        **vs.**
                                                        **1:22-CV-893**
**SUJA LIFE, LLC,**                                     **(MAD/DJS)**

                                        **Defendant.**

───────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

**SHEEHAN & ASSOCIATES, P.C.**          **SPENCER SHEEHAN, ESQ.**
60 Cuttermill Road Ste 412              **ANGELE AARON, ESQ.**
Great Neck, New York 11021              **KATHERINE LALOR, ESQ.**
Attorneys for Plaintiffs

**AMIN TALATI WASSERMAN, LLP**          **MATTHEW R. ORR, ESQ.**
515 South Flower St. - 18th and 19th Floors   **WILLIAM P. COLE, ESQ.**
Los Angeles, California 90071
Attorneys for Defendant

**COLLINS GANN MCCLOSKEY &**            **RICHARD D. COLLINS, ESQ.**
**BARRY PLLC**
138 Mineola Boulevard
Mineola, New York 11501
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

        On August 28, 2022, Plaintiff Rachel Lumbra ("Plaintiff") commenced this putative class

action against Defendant Suja Life, LLC ("Defendant") asserting violations of state and federal

consumer protection laws.  *See* Dkt. No. 1.  Plaintiff brings claims under New York General

Business Law §§ 349 and 350, the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and

several unspecified consumer fraud statutes of the states of Nevada, Wyoming, Louisiana,

Mississippi, Alaska, Montana, South Carolina, Tennessee, and West Virginia. *See id.* at ¶¶ 52-75. Plaintiff also asserts claims for fraud, negligent misrepresentation, and unjust enrichment under New York common law.[1]  *See id.* at ¶¶ 76-85.

On January 24, 2023, following a pre-motion conference, Defendant filed the instant motion seeking dismissal of Plaintiff's complaint. *See* Dkt. No. 17.  Plaintiff opposes the motion and Defendant has filed a reply. *See* Dkt. Nos. 18-19.  For the reasons stated below, Defendant's motion is granted.

## II.  BACKGROUND

According to the complaint, Defendant is a limited liability company incorporated in the State of Delaware with a principal place of business in San Diego, California.  Dkt. No. 1 at ¶ 26. Defendant is an award-winning seller and manufacturer of organic fruit and vegetable beverages, including apple and beet blends under its "Suja" brand. *Id.* at ¶¶ at 1, 34-35.  These juice beverages are represented as "Cold Pressed," which refers to a process of extracting juice from fruits and vegetables. *Id.* at ¶¶ 1-3.

Importantly, after the Suja juice is "cold-pressed," it is subjected to "cold pressure," also described as "high pressure processing" ("HPP")—a non-thermal treatment method used to preserve juice for up to sixty days.  Dkt. No. 1 at ¶¶ 17-18.  Defendant's product contains a small "High Pressure Certified" seal on the front label at the bottom of the bottle. *Id.* at ¶ 14.  The small front seal purportedly references the HPP treatment. *See id.* at ¶¶ 13-14.  On the back of the bottle, there is a label containing a brief description about this "cold pressure" treatment, followed by a website address with more information. *Id.* at ¶¶ 17-18.  Specifically, the back label states:

CAN'T STOP THE BEET

---

[1]  Plaintiff has withdrawn the negligent misrepresentation claim. *See* Dkt. No. 18 at 6 n.1.

> Suja is made sunny in San Diego, where we pick our favorite local
> fruits and veggies and then chill them out with cold pressure to keep
> them feeling fresh and tasting delicious.  We bottle up the power of
> plants so you can make nutrition your bliss!
>
> SUJAJUICE.COM/HPP

*Id.* at ¶ 17.

Aside from the small front seal and the back label description, there is no explanation as to what HPP or "cold pressure" processing means.  Dkt. No. 1 at ¶ 15.  Defendant's product is "often sold in produce aisles where groceries are sold, in proximity to juices made at those stores," which "have not been subject to any treatment beyond being cold-pressed."  *Id.* at ¶ 11.  The product is sold "at a premium price, approximately no less [] than $3.99 per 12 FL OZ, excluding tax and sales," which is "higher than similar products."  *Id.* at ¶ 21.

Plaintiff is a New York resident who has purchased Defendant's Suja cold-pressed juices at stores in Albany and Colonie, New York.   Dkt. No. 1 at ¶¶ 32, 38.  Plaintiff believed that Defendant's juice "was not processed after being cold-pressed."  *Id.* at ¶ 39.  Plaintiff's belief was "based on the front label, its placement within the store, prominent statements on similar products which disclosed how they were processed after being pressed, and/or the lack of any conspicuous disclosure of treatment methods beyond being cold-pressed[.]"  *Id.*  Plaintiff also "relied on the words, terms[,] coloring, descriptions, layout, placement, packaging, tags, and/or images" represented on the product's labeling, and advertisements in the store and other media.  *Id.* at ¶ 41.  Plaintiff did not notice the "High Pressure Certified" seal; she did not review the back label description; and she "did not know what cold or high pressure was relative to processing of juice."  *Id.* at ¶ 40.  Plaintiff paid more than she would have paid based on the product representations  *See id.* at ¶ 44.

Plaintiff's complaint contains the following allegation: "Where juice has not been subject to treatment beyond being extracted, terms used include 'fresh squeezed,' 'fresh pressed,' and 'cold-pressed[.]" Dkt. No. 1 at ¶ 7. Plaintiff asserts that, "without any prominent or clear disclaimers of additional processing steps," consumers[2] expect products described as "Cold-Pressed" to be "fresh," but that Defendant's product "is not fresh and has more in common with juices sold in standard refrigerator cases because it is highly processed after being cold-pressed." *Id.* at ¶¶ 12-13. By way of example, Plaintiff asserts that an apple juice made from "100% Freshly Pressed Apples" prominently discloses that it is also "Flash Pasteurized" in large capital letters. *Id.* at ¶ 8. Likewise, another brand of cold-pressed juices prominently states "Flash Pasteurized" directly beneath "Cold Pressed Juice." *Id.* at ¶ 10.

Plaintiff alleges that the small High Pressure Certified seal is "vague" and located "at the bottom of the bottle, where consumers are unlikely to notice it and have no idea what it refers to." Dkt. No. 1 at ¶ 10. Plaintiff contends that, "[g]iven that all juices are made by applying pressure, even if consumers notice this seal, they will believe it refers to the cold-pressing." *Id.* at ¶ 16. Plaintiff alleges that juice subjected to non-thermal HPP processing "is no longer fresh, and it is misleading to describe such a juice as 'cold-pressed' without an equivalent and conspicuous disclosure of this processing step." *Id.* at ¶¶ 17-19.

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir.

---

[2]   Plaintiff repeatedly refers to the expectations of unspecified "consumers" without any factual support aside from her own assertions. *See* Dkt. No. 1 at ¶¶ 4-6, 10, 12, 16, 30, 37,

2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.      General Business Law**

New York General Business Law Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349.  Additionally, Section 350 of the statute prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 350.  To state a claim under either section, a plaintiff must show "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 940 (2012)) (internal quotations omitted).  In the context of a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have mislead a reasonable consumer."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("A court may make this determination as a matter of law, although usually such a determination is a question of fact") (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

"New York courts apply an objective definition of deceptive acts and practices, concerned only with 'those likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (quoting *Oswego Laborers*, 85 N.Y.2d at 26).  "Accordingly, plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'"  *Jessani v. Monini North America, Inc.*, 744 Fed. Appx. 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  Instead, "[p]laintiffs must plausibly allege 'that a significant portion of

the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.*

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 8 F. Supp. 3d at 742. Courts examining misleading product claims often rely on common sense observations and judicial experience. *See e.g., Weinstein*, 819 F. Supp. 2d at 228 (stating that "*Iqbal* directs the Court to apply its common sense when determining the plausibility of a claim—common sense dictates that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees") (citation omitted); *Warren v. Coca-Cola Co.*, No. 22-CV-6907 (CS), 2023 WL 3055196, *1 (S.D.N.Y. Apr. 21, 2023) (rejecting challenge to "hard" seltzer product containing no distilled spirits and noting that "had [the plaintiff] lived in New York for any length of time, she would know that cocktails containing hard liquor are not and cannot be sold in grocery stores").

Defendant argues that Plaintiff's claims fail because she has not pleaded a material misrepresentation. *See* Dkt. No. 17-1 at 8. Defendant asserts that "Plaintiff tries to tease apart an illusory semantic distinction between cold pressed juice and juice that has been cold pressed[.]" *Id.* Defendant notes that there is no dispute that its juice is "cold pressed" but that Plaintiff instead "anchors her claims around her misconceptions of what cold pressed juice actually is." *Id.* Defendant emphasizes that "[c]old pressing is simply a method of extracting juice from fruits and vegetables." *Id.* at 9.

Defendant requests that the Court take judicial notice of the United States Food and Drug Administration's ("FDA") public service announcement ("PSA") regarding juice safety, which

generally informs consumers about risks associated with untreated or unprocessed juice.[3]  Dkt. No. 17-2; Dkt. No. 17-1 at 9.  The PSA also informs consumers about juice treatments, including pasteurization and non-thermal processes.  *See id.*  Defendant contends that, in light of the PSA and the Suja label disclosures, "it should have been more than clear from context that the products underwent further processing."  Dkt. No. 17-1 at 9-10.

Furthermore, Defendant asserts that "[c]ourts both in New York and across the country have resoundingly rejected the exact theory that Plaintiff advances here."  Dkt. No. 17-1 at 5.  For instance, in *Cristia v. Trader Joe's Company*, the plaintiff contended that "consumers understand 'cold pressed juice' to refer to juice 'which was extracted from fruits and vegetables and not processed or subjected to any form of preservation beyond being 'squeezed' or 'pressed.'"  *Cristia v. Trader Joe's Company*, No. 22-cv-1788, 2022 WL 17551552, *1 (N.D. Ill. Dec. 9, 2022).  In finding that the "cold-pressed" label was not misleading, the court noted that the plaintiff "acknowledge[d] in her complaint that the juice product is in fact cold pressed, a factually accurate statement" and that she "provide[d] only conclusory factual allegations to suggest that unspecified 'consumers' agree with her subjective interpretation[.]" *Id.* at *5.  Additionally, the *Cristia* court found that "[the] plaintiff's interpretation is contrary to the FDA's guidelines for juice manufacturing, as explained in the judicially noticed and publicly available PSA."[4]  *Id.*

Defendant cites similar cases from the Eastern District of New York, which the *Cristia* court also relied upon in evaluating "cold pressed juice."  *See* Dkt. No. 17-1 at 8; *Cristia*, 2022

---

[3]  Defendant did not provide the Court with a copy of the PSA, but included the following website address: https://www.fda.gov/food/buy-store-serve-safe-food/what-you-need-know-about-juice-safety (last retrieved on May 16, 2023).

[4]  The *Cristia* court took judicial notice of the juice safety PSA.  *See Cristia*, 2022 WL 17551552, at *2-3.

WL 17551552, at *4.  In *Campbell v. Freshbev LLC*, the plaintiff challenged four claims on the

defendants' juice labels—namely, "that the juices are (1) unpasteurized; (2) cold-pressed; (3)

fresh; and, (4) for the Cranberry Apple juice, the name . . . implies that there is more cranberry

juice than apple in the blend." *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 338 (E.D.N.Y.

2018).  The court dismissed the former two claims while allowing the latter two to proceed to

discovery.  *See id.* at 344.  In pertinent part, the court stated that:

> Plaintiff argues a reasonable consumer would interpret a 'cold-
> pressed' label to imply that nothing had been done to the juice
> except cold-pressing.  Plaintiff's claim is implausible.  There is no
> 'only' or 'exclusively' modifier before 'cold-pressed' to indicate that
> the juice has been subjected to no other processes.  A reasonable
> consumer would not mistake the cold-pressed claim to be a claim
> that pressure was never applied to the juice products.  Therefore,
> the claims regarding this statement are dismissed.

*Id.* at 341 (footnotes omitted).

In opposition, Plaintiff argues that under Sections 349 and 350 "technically true

statements are actionable" where they have the capacity to mislead reasonable consumers.  Dkt.

No. 18 at 9 (citations omitted).  Plaintiff asserts that Defendant's "front label unambiguously

promotes 'Cold-Pressed,' and that the purported disclaimers are "exceedingly vague or require[]

consumers to make inferences."  *Id.* at 10-11 (citation and internal quotations omitted).  In

contrast, Plaintiff asserts that "other competing brands prominently state, 'Flash Pasteurized'

directly beneath 'Cold Pressed Juice.'"  *Id.* at 10.  Plaintiff states that "it is plausible that a

'reasonable consumer might also focus on the more prominent portion of the product label that

touts the product as [Cold-Pressed],' and overlook the smaller text that [vaguely] discloses [an

additional processing step.]"  *Id.* at 11 (citations omitted) (brackets in original).

Plaintiff argues further that Defendant's reliance on past rulings "disregards that

'[r]easonable consumers should [not] be expected to look beyond misleading representations on

the front of the box to discover the truth[.]'" Dkt. No. 18 at 7 (citations omitted).  Plaintiff

contends that she should not have to go to a webpage address to learn about HPP.  *Id.* at 11.

Plaintiff also argues that in the previous cases the products' side labels explained the subsequent

processing steps—unlike Defendant's product, which provides "no visible explanation" as to what

HPP or "High Pressure Certified" means.  *Id.* at 8.

Herein, the Court finds that Plaintiff has failed to plausibly allege that Defendant's product

is materially misleading.  As an initial matter, it is notable that the parties do not dispute that

Defendant's juices are "cold pressed"—a factually accurate statement.  Thus, Plaintiff's claim

hinges on context, the objective reasonableness of a consumer in circumstances alleged in the

complaint, and common sense.  *See Lisa Coppola, LLC v. Higbee*, No. 19-CV-678 (CR), 2020

WL 1154749, *8 (W.D.N.Y. Mar. 10, 2020) ("A reasonable consumer for purposes of a GBL §

349 analysis 'does not lack common sense' and is not assumed to be 'the least sophisticated

consumer'") (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018)).

Plaintiff's allegation that "all juices are made by applying pressure" is plainly inconsistent

with common sense.  Dkt. No. 1 at ¶ 16.  Even the plaintiff in *Cristia*—who was represented by

the same attorney in this case—acknowledged that there exists a distinction between "juices made

by pressure" (*i.e.*, hydraulic press) and "juices made from a centrifugal juice machine" (*i.e.*,

blender).  *Cristia*, 2022 WL 17551552, at *1.  Thus, Plaintiff's corollary belief that "even if

consumers notice [the "High Pressure Certified" seal], they will believe it refers to the cold-

pressing" lacks reasonableness.  Dkt. No. 1 at ¶ 16; *see also Davis v. Hain Celestial Group, Inc.*,

297 F. Supp. 327, 335 (E.D.N.Y. 2018) ("Contrary to plaintiff's assertion, a reasonable consumer

would not conflate the two different rounds of pressure [the one that extracts the juice and the one

that renders it shelf stable] and would understand that the juice had been subjected to pressure after the initial 'cold pressing' step").

Additionally, the Court notes several observations regarding the product images contained in the pleadings.  *See* Dkt. No. 1 at ¶¶ 1, 8, 10.  While Defendant's product states "cold pressed" in capital letters near the middle of the label and directly under the Suja logo, they are in relatively small text and in light, low contrasting color.  *Id.* at ¶ 10.  Conversely, the competitor cold-pressed juice states, in significantly large letters, "Cold Pressed," and "Flash Pasteurized" in much smaller letters directly below.  *Id.*  But even if Defendant's product had "Cold Pressed" as prominently displayed as it is on the comparative brand, it is not "Flash Pasteurized," and has never been subjected to a heat treatment (*i.e.*, pasteurization).  *See id.* at ¶ 18.  Instead, as Plaintiff acknowledges, Defendant's product is subjected to a non-thermal (*i.e.*, cold) pressure process.  *See id.* at ¶¶ 17-18.  Thus, although they are both post-extraction juice treatment processes, Plaintiff's attempt to equate flash-pasteurization to non-thermal HPP is inapposite for the purposes of this case.  *See Davis*, 297 F. Supp. 3d at 335 ("'Cold pressed' does not cease to be a truthful moniker for the juice simply because there were subsequent steps in the juice's production process").

Overwhelmingly, the Court finds instructive *Cristia*, *Campbell*, and the additional Eastern District of New York decisions cited by Defendant.  *See e.g., Cristia*, 2022 WL 17551552, at *4 ("These courts agree that plaintiff's 'cold pressed juice' versus 'juice that is cold pressed' distinction is 'little more than grammatical sophistry'") (quoting *Daily Greens*, 2018 WL 4259978, at *3).  Contrary to Plaintiff's assertion, the products in those cases are not distinguishable because, in this case, the front seal and the back label explanation also inform consumers that

Defendant's juice underwent subsequent processing.  *See* Dkt. No. 1 at ¶¶ 14, 17; Dkt. No. 18 at

7-8 (citations omitted).

The Court takes judicial notice of the FDA's juice safety PSA, as is permissible under

Federal Rule of Evidence 201(b), to the extent that it contains facts that are not subject to

reasonable dispute.  *See Richardson v. N.Y.C. Bd. of Educ.*, 711 Fed. Appx. 11, 13-14 (2d Cir.

2017).  Most germane to this case is the fact that "[m]ost of the juice sold in the United States" is

either "pasteurized (heat-treated) to kill bacteria" or "treated by non-heat processes for the same

purpose."[5]  Additionally, it is widely known that unprocessed juices sold in grocery stores are

required to contain warning labels informing consumers of harmful bacteria risks.[6]

Plaintiff claims that she repeatedly purchased Defendant's product at stores in New York,

and that Defendant's product "is often sold in produce aisles where groceries are sold, in

proximity to juices made at those stores[.]"  Dkt. No. 1 at ¶¶ 11, 38.  Plaintiff also claims that she

did not notice the front seal; she did not read the back label description; and she "did not know

what cold or high pressure was relative to processing of juice."  *See id.* at ¶¶ 38-40.  Taking

Plaintiff's allegations as a whole, when viewed in the context of a reasonable consumer under

similar circumstances, Defendant's product is not materially misleading because a reasonable

consumer would know or expect that the juice has been processed.[7]  *See Campbell v. Drink Daily*

---

[5]
https://www.fda.gov/food/buy-store-serve-safe-food/what-you-need-know-about-juice-safety (last
retrieved May 16, 2023).

[6]  *See id.*

[7]  Plaintiff's attempt to equate "cold pressed" to the term "fresh" (or some variation
thereof) is further undercut by the FDA's regulation governing "fresh" food labels.  21 C.F.R. §
101.95.  The regulation expressly allows processed foods to use the word "fresh," so long as "the
term does not suggest or imply that a food is unprocessed or unpreserved."  *Id.*  Although
Defendant's product uses the word "fresh" in the back label description, it does so only once, in
small text, and in the context of explaining that the juice has been subjected to cold pressure

*Greens, LLC*, No. 18-CV-7176 (ILG), 2018 WL 4259978, *4 (E.D.N.Y. Sept. 4, 2018) (rejecting claim "that the 'cold-pressed' label on the Product is materially misleading because it would lead a reasonable consumer to conclude that no other processes (like, e.g., HPP) were applied to the Products after cold-pressing").

Accordingly, Plaintiff has failed to state a plausible cause of action under N.Y. Gen. Bus. L. §§ 349 and 350.

## C.     Breach of Warranty (**Magnuson-Moss Warranty Act**)

The Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)).  Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  "To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Group, LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) (citing *Cooper v. Samsung Elecs. Am.,*

---

processing.  *See* Dkt. No. 1 at ¶ 17 (". . . we pick our favorite local fruits and veggies and then chill them out with cold pressure to keep them feeling fresh and tasting delicious.").  While the description does not explicitly tease out cold-pressing extraction from subsequent cold-pressure processing, taking Plaintiff's allegations as a whole, this does not appear to be an impermissible use of the word.  Curiously, neither party has briefed the regulation's applicability to this case; hence, the Court limits its discussion to the foregoing.

*Inc.*, 374 Fed. Appx. 250, 254 (3d Cir. 2010); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

To state a claim for a breach of an express warranty in New York, the plaintiff must allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (citations and internal quotations omitted). Notably, prior to commencing a breach of express warranty action, the buyer must provide the seller with timely written notice of the alleged breach. *See* N.Y. U.C.C. § 2-607(3)(a) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). The notice requirement is intended "to give the seller the opportunity to make adjustments or replacements," to minimize loss and liability, and "to give the seller a chance to prepare for negotiation and litigation." *Besicorp Group, Inc. v. Thermo Electron Corp.*, 981 F. Supp. 86, 101-02 (N.D.N.Y. 1997) (citations omitted).

As to breach of implied warranty claims, New York law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). "To be merchantable, goods 'must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any.'" *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (quoting N.Y. U.C.C. § 2-314(2)). "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Id.* (citations and internal quotations omitted).

Herein, the Court finds that Plaintiff has failed to plausibly allege either an express or an implied breach of warranty claim.  First, Defendant argues that Plaintiff failed to provide notice prior to commencing suit relative to the express warranty claim.  Dkt. No. 17-1 at  Plaintiff argues that she complied with the notice requirement "because she purchased the Products 'between January 1, 2022 and August 1, 2022' and 'within a reasonable time thereafter' notified Defendant of the breach by filing this action on August 28, 2022."  Dkt. No. 18 at 12 (citation omitted). Plaintiff relies on distinguishable authority for this proposition and thus the Court will not apply an exception that is inapplicable to the facts of this case.[8]  *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018) ("Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic injury") (citations omitted).  As such, Plaintiff's express warranty claim fails because she failed to provide Defendant timely notice prior to commencing suit.

Second, Plaintiff has failed to plausibly allege an implied breach of warranty claim because there is no allegation that Defendant's juice beverage was unfit for the ordinary purposes (*i.e.*, human consumption).  *See Cosgrove*, 520 F. Supp. 3d at 586 (citation omitted).  In any event, both the express and implied warranty claims fail because they merely restate that the Suja juice "was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was not processed after being cold-

---

[8] The case that Plaintiff relies on merely "suggests" in a footnote that a summons and an amended complaint "may constitute reasonable notice in certain cases." Dkt. No. 18 at 12 (citing *Tomasino v. Estee Lauder Companies, Inc.*, 44 F. Supp. 3d 251, 261 n.6 (E.D.N.Y. 2014)) (citations omitted).

pressed[.]" Dkt. No. 1 at ¶ 61.  But as discussed in detail above, Plaintiff has failed to plausibly

allege Defendant misrepresented its product as being unprocessed; thus, Plaintiff's breach of

warranty claims fail for the same reasons her Sections 349 and 350 claims.

Because Plaintiff's warranty claims are insufficiently pleaded under state law, there can be

no plausible claim under the MMWA.  *See Garcia*, 172 F. Supp. 3d at 232 (citations omitted).

## D.   Fraud

"To prove common law fraud under New York law, a plaintiff must show that (1) the

defendant made a material false representation, (2) the defendant intended to defraud the plaintiff

thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered

damage as a result of such reliance."  *Banque Arabe et Internationale D'Investissement v. Md.

Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted).  Additionally, allegations of fraud

must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b),

which requires a party alleging fraud to "state with particularity the circumstances constituting

fraud[.]" Fed. R. Civ. P. 9(b).  The Second Circuit has explained that, in order to comply with

Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally."  Fed. R. Civ. P. 9(b).  However, because the court "must not mistake

the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to

base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts

that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Group, Inc.*, 47 F.3d

47, 52 (2d Cir. 1995) (citations omitted).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

Plaintiff has failed to plausibly allege a reasonable reliance, a materially false representation, or an intention to defraud.  As discussed previously, there are no plausible allegations of a materially false representation relative to Defendant's product; it follows that Plaintiff has failed to plausibly allege reasonable reliance.  Notwithstanding, Defendant argues that the complaint "contains zero allegations regarding the fraudulent intent element," and otherwise consists of "conclusory and boilerplate allegations[.]"  Dkt. No. 17-1 at 17.  In response, Plaintiff summarily restates the basic "who, what, where, when, and how" allegations in her complaint, and contends that fraudulent intent may "be alleged generally" under Rule 9(b). Dkt. No. 18 at 14.  But Plaintiff has otherwise made no attempt to explain how her complaint adequately alleges an intent to defraud on Defendant's part, contrary to Rule 9(b)'s heightened pleading standard.

As such, Plaintiff has failed to plausibly allege a claim for fraud.

**E.      Unjust Enrichment**

"To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (citation omitted)).  "[U]njust enrichment is not a catchall

cause of action[.]  It is available only in unusual situations when, though the defendant has not

breached a contract nor committed a recognized tort, circumstances create an equitable obligation

running from the defendant to the plaintiff."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777,

790 (2012).  As such, "an unjust enrichment claim cannot survive 'where it simply duplicates, or

replaces, a conventional contract or tort claim.'" *Koenig*, 995 F. Supp. 2d at 290 (quoting

*Corsello*, 18 N.Y.3d at 790-91).

Herein, in reference to the unjust enrichment claim, the complaint alleges only that

"Defendant obtained benefits and monies because the Product was not as represented and

expected, to the detriment and impoverishment of Plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits." Dkt. No. 1 at ¶ 85.  In her

opposition, Plaintiff acknowledges that this claim "may be 'duplicative' of the GBL claims[.]"

Dkt. No. 18 at 14.  Because this claim is based on the same allegations as Plaintiff's common law

and statutory claims, it is indeed duplicative, and thus cannot be maintained.

Accordingly, Plaintiff has failed to state a plausible claim for unjust enrichment.

**F.      Unspecified Statutes of Other States**

Finally, Plaintiff's complaint contains vague references to "Consumer Fraud Acts of the

States in the Consumer Fraud Multi-State Class[.]"  Dkt. No. 1 at ¶¶ 57-60.  Plaintiff provides

virtually no substantive opposition to Defendant's motion in this regard other than stating that

"she has standing to bring this proposed class action, making it appropriate to defer consideration

of standing until the class certification stage." Dkt. No. 18 at 12 (internal quotations and brackets

omitted).  Because there are no viable claims otherwise alleged, Plaintiff cannot be an appropriate

class representative, and thus the complaint must be dismissed in this regard.

**IV.  CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that the complaint (Dkt. No. 1) is **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Local Rules;

**IT IS SO ORDERED.**

Dated: May 26, 2023
          Albany, New York

Mae A. D'Agostino
U.S. District Judge